YARRUT, Judge.
This suit arises out of an accident causing injury to Plaintiffs in which a taxicab, operated by an employee of Cooperative Cab Company, Inc., d/b/a United Cab Company, ran into a street excavation, made by the Sewerage & Water Board of New Orleans (hereinafter called the Water Board), near the intersection of Eagle and Palmetto-Streets in the uptown section of New Orleans.
Plaintiffs, husband and wife, who were passengers in the cab, sued both Cooperative Cab Company and the Water Board for personal injuries sustained by the wife, and her medical expenses. The Water Board made Cooperative Cab Company a third-party Defendant.
The District Court awarded Plaintiff-wife $5,000 for pain and suffering, and Plaintiff-husband $888.18 for medical expenses, only against the Water Board. Plaintiffs’ and the Water Board’s demands against Cooperative Cab Company were dis *347 missed. The Water Board and Plaintiffs have appealed, the latter contending Cooperative Cab Company should be held in solido with the Water Board and for an increase in Plaintiff-wife’s award to $7,-500.
The accident occurred November 9, 1963, between 5:30 and 6:00 p. m., after the taxicab turned left from Palmetto Street into Eagle Street, and within 50 feet on Eagle Street where it came to a jolting stop. The driver cut his lip on the steering wheel and the Plaintiffs landed on the taxicab floor.
According to both Plaintiff-husband and the taxicab driver, the front wheels of the cab went completely into the excavation, the front axle coming to rest on the concrete edge of the hole. The excavation extended from 12 to 16 feet across Eagle Street and was approximately 3 feet wide. There is, however, conflicting testimony concerning its depth. Plaintiff-husband estimated the depth was between 18 and 20 inches; the cab driver between 12 and 16 inches; and three Water Board employees between 2 and 6 inches. Plaintiff-husband and the cab driver, with the aid of another man, pushed the cab out of the excavation. The taxicab driver then took Plaintiffs to their destination.
That night, shortly after the accident had been reported to the Water Board, it erected a warning barricade with a light at the side of the accident. It is undisputed that, prior to this time, there was nothing to warn of the excavation.
Plaintiffs charge the Water Board was guilty of negligence in permitting the excavation to remain open and unguarded, without any device to warn approaching automobiles of its existence.
The Water Board contends (1) that the excavation site was safe, being only a few inches deep at the time of the accident, and no warning device was necessary; (2) that it not only back-filled the excavation after the completion of the repair work, but on three occasions thereafter a “follow-up” crew filled it above-grade with shells, the last time being five days before the accident, all work being done in a proper and acceptable manner; and (3) even if the excavation were unsafe, this was due to an Act of God, a 4-inch rainfall which occurred the day of the accident.
With regard to the first defense, no photographs of the scene of the accident were taken or produced by the Water Board at the trial. The district judge, as we must, concluded that the unguarded depth of the excavation was 16 to 20 inches.
The Water Board relies on Bergeron v. Sewerage & Water Board of New Orleans, La.App., 86 So.2d 925, which is distinguishable from the instant case. In the cited case, the depth of the cavity was, at the most, 3 or 4 inches beginning at the perimeter and sloping toward the center, not an abruptly declining deep (18 inch) excavation as in the instant case. The Court in the cited case recognized the principle, applicable here, that the law imposes upon municipal corporations the obligation of guarding against hazards which can or ought to be anticipated in the exercise of reasonable prudence and care, but found the street irregularity so slight that it was not dangerous.
With regard to the Water Board’s other contentions, conceding arguendo that the back-filling and follow-work was done in a non-negligent manner and that heavy rainfall caused the subsidence, nevertheless the Water Board should have anticipated that heavy rainfall or unusually heavy traffic could cause a deepening of the “cut.” Therefore it was incumbent upon the Water Board to place a warning device at the excavation until it was hard-surfaced. In failing to do so, we find it was negligent.
The cab driver was not guilty of any negligence whatsoever. It was nearly *348 dark at the time of the accident. His regular lights were on hut, because it was dusk, they were not reflected on the pavement; and he had just made a turn into Eagle Street driving at a rate of 10 or 15 miles per hour. As there was no barricade or other warning, he could not see the hole and had no opportunity to apply his brakes. The impact of the wheels against the excavation brought his cab to a halt.
There is no question that the Water Board did not properly make the repairs. The only question is whether, until the work was completed, it left the work in such an unguarded state as to constitute a “hidden trap.” Regarding heavy rains causing the declivity in the work, common occurrences, which are well-known to all, are not considered Acts of God or vis majors, because they can be anticipated and guarded against.
Since the unguarded ditch was a hidden trap, the taxicab driver was guilty of no negligence. The only negligence must be attributed to the Water Board.
With regard to quantum, two physicians testified for Plaintiffs, Dr. Joseph Dugas, Jr., a surgeon, who treated the Plaintiff-wife from November, 1963 through the date of the trial on June 22, 1965; and Dr. Raeburn C. Llewellyn, a neurosurgeon, who examined her on three occasions. Testifying for the Water Board, was Dr. Richard Levy, an orthopedic surgeon, who examined the Plaintiff on one occasion only. According to Dr. Dugas, Plaintiff-wife suffered a severe lumbo sacral sprain for which he administered 58 physio-therapy treatments, consisting of diathermy and traction and a neck strain, for which he prescribed a Thomas collar that she wore for six months. As late as a week before the trial, Dr. Dugas found muscle spasms in her lumbo sacral region. Although the Plaintiff-wife had degenerative changes in the spine and osteoporosis (a softening of the bone) which pre-existed the accident, Dr. Dugas testified it was unlikely that she would have experienced such severe symptoms in the absence of an accident.
Dr. Llewellyn testified that Plaintiff-wife had suffered a “mild to moderate” sprain; that he found muscle spasms the second time he examined her and that, on July 22, 1964, the last time he saw her, there was evidence of “uncomfortableness and irritability” in the lower back region; and that, although she did have degenerative bone changes which pre-dated the accident, it was his opinion that she was free of symptoms prior to the accident.
Dr. Levy found no objective symptoms on the one occasion that he examined her and could not say whether the accident had aggravated her pre-existing spinal disability.
Plaintiff-wife herself testified she had little trouble with her neck at the time of the trial, but still suffered from considerable back pain, with difficulty getting out of bed in the morning.
We find that the $5,000 award for pain and suffering was neither inadequate nor excessive in the light of recent awards for similar injuries. Fowler v. F. W. Woolworth Co. La.App. 169 So.2d 754; Reeves v. Brown, La.App. 168 So.2d 466.
For the above reasons, the judgment appealed from is affirmed; the Defendant Sewerage & Water Board to pay all taxable costs in both courts.
Judgment affirmed.